**Richard PICARIELLO et al., Plaintiffs,**

**v.**

**Charles E. FENTON, Jr. et al., Defendants.**

**Civ. No. 79–317.**

United States District Court, M. D. Pennsylvania.

May 7, 1980.

As Amended July 25, 1980.

See also, D.C., 491 F.Supp. 1026.

Steven Ney, Washington, D. C., Edward I. Koren, Amherst, N. Y., Alvin J. Bronstein, National Prison Project, Washington, D. C., John M. Humphrey, Williamsport, Pa., Reita P. Pendry, Washington, D. C., for plaintiffs.

Harry A. Nagle, Asst. U. S. Atty., Lewisburg, Pa., Earl Kaplan, Henry E. Davis, Crim. Div., U. S. Dept. of Justice, Washington, D. C., for defendants.

## OPINION

### # 1 of May 7, 1980

MUIR, District Judge.

On March 13, 1980, following 21 days of trial the jury in the above-captioned case completed its deliberations on the liability phase of this action. In response to special

verdict questions, it found that Plaintiff Picariello was subjected to cruel and unusual punishment and summary punishment by Defendants Hudson and Fenton. The jury also found that Plaintiff Glick was subjected to cruel and unusual punishment and summary punishment by Defendants Cassella and Fenton. In response to other questions, however, the jury determined that all three Defendants acted with a reasonable good faith belief that their actions were lawful.

Following the return of the jury's verdict the Plaintiffs moved for judgment notwithstanding the verdict or to resolve inconsistent jury findings. The Court directed that briefs be filed. The Plaintiffs filed a brief in support of their motion on March 24, 1980 and the Defendants filed a response on April 7, 1980. Plaintiffs filed a reply brief on April 10, 1980. Before deciding Plaintiffs' motion, the Court on April 11, 1980 ordered that the issue of damages be tried. This was done because the Court wanted the jury's advice on damages in the Federal Tort Claims aspect of the case, see Opinion # 2 of this date, *Picariello v. Fenton*, 491 F.Supp. 1026 and to eliminate the need for an extended proceeding before a new jury if the Court denied Plaintiffs' motion and entered judgment in favor of the Defendants and if on appeal that decision was reversed. The issue of damages was tried on April 29, 1980 and the jury awarded damages in the amount of $1.00 to each of Plaintiffs Picariello and Glick. The facts out of which this action arose are set forth in detail in the Court's opinion filed this day, *Picariello v. Fenton*, 491 F.Supp. 1026, and will not be repeated here.

Plaintiffs' argument is that as a matter of law the Defendants are not entitled to a good faith defense. They argue that it is impossible for the Defendants intentionally to inflict cruel and unusual punishment and summary punishment on a prisoner while believing in good faith that the actions they took were lawful. Plaintiffs base this conclusion on two subsidiary arguments relating to the requirements of Defendants' immunity defense. Plaintiffs first contend that in view of the jury's finding of intentional conduct, the Defendants subjectively could not have believed that the actions they took were lawful. The Plaintiffs' second contention is that because the law clearly prohibited cruel and unusual punishment and summary punishment, the Defendants reasonably could not have believed that their actions were lawful. The Court finds Plaintiffs' arguments unconvincing.

In *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975), the United States Supreme Court held that a public school official's immunity from liability for violations of a student's constitutional rights would be lost if one of two tests were met. The official would not have immunity if he "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected." This can be characterized as the objective good faith test. Immunity would also not be available if the official took the action with the "malicious intention to cause a deprivation of constitutional rights or other injury to the student." This is the subjective test of good faith.

██ The first or objective branch of the *Wood v. Strickland* rule was restated by the Supreme Court in *Procunier v. Navarette*, 434 U.S. 555, 562, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978). The Court there held that a prison official could not rely on the immunity defense if three conditions were met: (1) the constitutional right infringed was clearly established at the time of Defendants' actions, (2) the official knew or should have known of that right, and (3) he knew or should have known that his conduct violated the constitutional norm. It is the Court's view that the jury could reasonably have found that the Defendants acted in good faith in accordance with this standard.

Plaintiffs base their argument on the proposition that the jury must have found that Plaintiff Picariello was subjected to a beating by the Defendants. From this, Plaintiffs argue that it is impossible as a matter of law for the Defendants to have

acted in good faith because beatings by prison officials were clearly established to be unconstitutional in April, 1978 and that the Defendants reasonably should have known that beatings were unlawful and that their conduct was unlawful. Plaintiffs contend that the jury could not have found an Eighth Amendment violation unless they found that the Plaintiffs were victims of the "wanton infliction of pain." The Court's charge on the definition of cruel and unusual punishment is set forth at the margin.[1] That charge, when taken as a whole, clearly permitted the jury to find an Eighth Amendment violation if the actions of the Defendants were "incompatible with the evolving standards of decency that mark the progress of a maturing society or which involve unnecessary and wanton infliction of pain." The jury was instructed to consider the need for the application of force, the amount of force, the injury inflicted and whether the force was applied in good faith. After considering those factors, the jury could have found an Eighth Amendment violation without finding that the defendants wantonly and unnecessarily inflicted pain.

The jury reasonably could also have found that Picariello's placement on the floor, face down while in restraints, for over an hour violated his Fifth and Eighth Amendment rights. Plaintiffs have been unable to point to any case which even suggests that confinement on the floor for a period of at most two hours while in restraints under conditions similar to those which existed at Lewisburg on April 14, 1978 was unconstitutional as either violative of the Fifth or Eighth Amendments. The Court, therefore, concludes that the jury reasonably could have found that the Defendants did not violate a clearly established constitutional right and that they did not know nor should they have known that their conduct with respect to Picariello was unconstitutional.

■ The jury's finding of good faith with respect to Picariello on this branch of the good faith test is completely consistent with its finding that Picariello's constitutional rights were intentionally violated. This is

---

1. Each plaintiff claims that he was unjustifiably and unlawfully terrorized and beaten and abused by defendants in violation of his constitutional rights. Even though each plaintiff was a prisoner at the time, he had the constitutional right not to be subjected to unjustified or excessive physical attack by correctional staff. The constitutional prohibition against cruel and unusual punishment means, among other things, that correctional staff may not intentionally inflict bodily injury, mental abuse or pain on a prisoner except to the extent unavoidably necessary to maintain or restore the security of the institution. Even if physical force is required to maintain or restore the security of the institution, the Constitution protects prisoners from being subjected to force in excess of what is required by the situation.

There is no simple test to use to determine if punishment is cruel and unusual. Although at one time only outrageous and barbarous practices were cruel and unusual, that is not the case today. The prohibition against cruel and unusual punishment embodies broad and idealistic concepts of human dignity, civilized standards, humanity and decency. Punishments are repugnant to the Eighth Amendment which are incompatible with the evolving standards of decency that mark the progress of a maturing society or which involve unnecessary and wanton infliction of pain.

Plaintiffs need not prove physical contact to hold one or more of the defendants liable for violating the Eighth Amendment rights of Plaintiffs. Infliction of mental anguish, mental torture, threats of bodily harm or death, instilling fear and terror, without actual physical contact have been determined to violate the ban on cruel and unusual punishment.

In determining whether the use of force or the treatment of plaintiffs violated their rights you are required to take into consideration the treatment of plaintiffs considered as a whole. Thus, you should not view each incident in a vacuum by itself, but rather consider the aspects of the conditions as part of the totality in evaluating whether plaintiffs' rights were violated.

Not every push or shove, even if it may later seem unnecessary in the peace of a courtroom, violates a prisoners' constitutional rights. In determining whether the constitutional line has been crossed, you should look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm, or inflicting punishment.

true even though Picariello had the clearly established right, of which the Defendants were aware, not to be subjected to cruel and unusual punishment or summary punishment. This is because given Picariello's conduct and the conditions at Lewisburg on April 14, 1978, Picariello did not have a clearly established right not to be confined face down on the floor while in restraints for at most two hours.

The Court reaches the same conclusion with respect to Plaintiff Glick. The jury could have found that Glick's confinement in his cell while in restraints for a period of as little as three and as long as five days constituted cruel and unusual punishment as well as summary punishment. Recognizing that Glick had the constitutional right to be free from cruel and unusual punishment as well as summary punishment, the question remains whether the Defendants knew or should have known that their conduct violated constitutional norms. Although Plaintiffs have cited several cases involving the use of restraints, all of those cases involved extreme circumstances, none of which are present here.

*Weems v. United States*, 217 U.S. 349, 364, 30 S.Ct. 544, 548, 54 L.Ed. 793 (1910) involved a form of punishment known as *cadena temporal* which consisted of at least 12 years and a day of hard labor while in chains. *Spain v. Procunier*, 408 F.Supp. 534, 538–39, 544 (N.D.Cal.1976), *aff'd in part, rev'd in part* and *modified in part*, 600 F.2d 189 (9th Cir. 1979) involved solitary confinement for a period of more than four years with manacles, shackles, waist belts, leg and neck chains used whenever the Plaintiffs were out of their cells. On appeal, the Court of Appeals for the Ninth Circuit affirmed the district court's finding that the use of all the restraints for the 4½ year period whenever the Plaintiffs were out of their cells but still in the prison violated the Eighth Amendment. *Spain v. Procunier*, 600 F.2d 189, 197 (9th Cir. 1979). *Landman v. Royster*, 333 F.Supp. 621, 638, 639, 647–48 (E.D.Va.1971) involved prisoners who in addition to being handcuffed while in their cells were also chained to the cell bars for as long as five days without

being released to eliminate bodily wastes. In addition, they were unable to eat. None of those cases involved confinement of a prisoner in his cell for three days. Consequently, the jury's determination that Defendants Cassella and Fenton acted in good faith with respect to Plaintiff Glick is not inconsistent with the finding that Glick's constitutional rights were violated.

Plaintiffs also argue that the finding of intentional conduct on the part of the Defendants strips them of their immunity under the second or subjective branch of the *Wood v. Strickland* standard which imposes liability where the official has acted with a "malicious intention" to deprive Plaintiff of a constitutional right or to cause him "other injury." Plaintiffs cite *Procunier v. Navarette*, 434 U.S. 555, 566, 98 S.Ct. 855, 862, 55 L.Ed.2d 24 (1978) in support of their argument that all that is required is a finding of intentional conduct to strip an official of immunity. While it is true that the Supreme Court in *Navarette* stated that the part of the immunity defense which speaks of intentional injury contemplates the situation where the actor intends the consequences of his conduct, this Court is of the view that the Supreme Court did not hold that all intentional conduct precluded the immunity defense. The question in *Navarette* was whether certain negligent conduct violated the Plaintiffs' constitutional rights. In that context, the Court found that there was no need to consider the second branch of the *Wood v. Strickland* test because there was no allegation of intentional injury.

■ If the Court were to adopt Plaintiffs' reasoning, the use of the word "malicious" modifying "intention" in *Wood v. Strickland* would be meaningless. It is the Court's view that in order for an official to lose his immunity under the subjective branch of the *Wood v. Strickland* test more than intentional conduct must be shown. It must be shown that the official at least acted with an intent to cause injury to the Plaintiff. This is evident from decisions relating to the immunity defense.

*Scheurer v. Rhodes*, 416 U.S. 232, 235, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) involved allegations of intentional, reckless, willful and wanton conduct arising out of the shooting of students at Kent State University on May 4, 1970. *Wood v. Strickland*, 420 U.S. 308, 309–310, 95 S.Ct. 992, 994–995, 43 L.Ed.2d 214 (1975) also involved intentional conduct. In that case, school officials had expelled students. In *Winsett v. McGinnes*, 617 F.2d 996 at 1009 (3d Cir. 1980), the United States Court of Appeals for the Third Circuit held that before a prison official loses his immunity under the second branch of the *Wood v. Strickland* standard, it must appear that he acted maliciously toward the Plaintiff.

Plaintiffs' interpretation of the subjective branch of the *Wood* vs. *Strickland* test is inconsistent with the objective branch. Under the objective branch, a defendant is entitled to immunity if there was no reason for him to know his intentional conduct violated Plaintiffs' constitutional rights. Plaintiffs' interpretation of the subjective branch would impose liability on that Defendant. In order for the subjective branch to have a reasonable meaning it must require that the Defendant have acted with an intent to injure the Plaintiff.

■ The jury could have found that the actions taken by the Defendants with respect to Picariello and Glick were intentional in that the Defendants intended to place Picariello on the floor while in restraints and to keep Glick confined in a cell while in restraints. The jury, however, may also have found that the Defendants acted without a malicious intent to cause injury to either man. The jury could have found that the actions were taken for reasons of security and that the Defendants believed that their actions were proper. Under those circumstances, the jury's finding of good faith is consistent with its determination that Plaintiffs Picariello's and Glick's constitutional rights were violated.

■ Plaintiffs also argue that the Court's charge concerning the good faith defense was confusing because it mixed the elements of the two branches of the *Wood v.*

*Strickland* test. Although Plaintiffs argued in their trial brief and noted in their proposed points for charge that the Defendants were not entitled to a good faith immunity as a matter of law, they did not except to the charge as given on this point as required by Fed.R.Civ.P. 51. In any event, as the discussion above makes clear, the Defendants were entitled to a charge on good faith because there was evidence from which the jury reasonably could have concluded that the Defendants did not act with a malicious intent and that the Defendants did not know nor should they have known that their conduct was unlawful.

In addition, the Court's charge on this point was taken with few changes from Plaintiffs' proposed point for charge No. 17 which provided that to prove a good faith defense a Defendant must prove an actual belief that his conduct was lawful and that that belief was held in good faith. The Court further charged that if a Defendant "was motivated by malice for a Plaintiff or acted in callous disregard of or with indifference for the Plaintiff's rights" the jury could not find that the Defendant acted in good faith. These points go to the subjective branch of the *Wood v. Strickland* test. The Court also charged the jury that a "Defendant is not immune from liability if he knew or reasonably should have known that the actions he took . . . would violate the [Plaintiff's] constitutional rights." This point covered the objective branch of the *Wood v. Strickland* test. The charge made it clear that in order to be entitled to a finding of good faith, the Defendants had to satisfy both branches of the good faith test.

Because the jury was properly charged on the elements of the good faith immunity and the jury's answers to the special verdict questions were consistent and supported by the evidence, the Plaintiffs' motion for judgment notwithstanding the verdict or to resolve inconsistent jury findings will be denied.